**Raynard HUDSON, Appellant**
**(Defendant Below),**

v.

**STATE of Indiana, Appellee**
**(Plaintiff Below).**

No. 4–683A193.

Court of Appeals of Indiana,
Fourth District.

April 26, 1984.

6. Was it fundamental error for the trial court to allow mug shots in evidence when they indicated Hudson had been arrested for prior criminal activity?

7. Were the verdicts contrary to law as being supported by insufficient evidence?

## FACTS

On three separate occasions in February, 1982, officers of the Michigan City Police Department arranged with a confidential informant for the purchase of Preludin, a Schedule II controlled substance, from Hudson. All three controlled buys were regulated by a thorough pat down search of the informant, which included a search of his pockets, socks, pants, legs, arms, shoulders, and mouth. The officers then supplied him with money and police undercover vehicles and trailed him closely to the location of each transaction. After each buy, the informant was again searched. Each purchase yielded six pills, all except one of which were identified as Preludin.

Hudson was charged by information with three counts of dealing in Preludin. On August 6, he appeared in court for the setting of his trial date for September 27. On September 15, the State amended the information by substituting the word "phenmetrazine" in the offense in place of "Preludin," its generic name. The court convened for trial on September 27, but Hudson did not attend. Defense counsel moved to withdraw his representation by reason of his unsuccessful efforts to contact his client, even to remind him of the trial date. The court denied this motion then proceeded with the hearing despite Hudson's absence, noting he had been present at the time the trial date had been set. Defense counsel made no further objections to the prosecution of the case, and the State proceeded with its case-in-chief.

William Janes, Michigan City, for appellant.

Linley E. Pearson, Atty. Gen., Louis E. Ransdell, Deputy Atty. Gen., Indianapolis, for appellee.

MILLER, Judge.

Raynard Hudson, defendant-appellant in this cause, seeks reversal of his three convictions for dealing in a Schedule II controlled substance (IND.CODE 35–48–4–2, Class B felony). He presents us with seven procedural and substantive issues for review but finding no reversible error, we must affirm the judgments rendered on the jury verdicts herein.*

## ISSUES

1. Did the trial court err in allowing the State to file an amended information without prior notice to Hudson and an opportunity to be heard?

2. Did the trial court err in failing to arraign Hudson on the amended information?

3. Did the court err by proceeding with the first day of trial in Hudson's absence?

4. Did the trial court err in refusing Hudson's counsel's motion to withdraw on the first day of the trial?

5. Was it error to allow a non-expert witness to identify the substances allegedly sold by Hudson?

---

* We have observed that one of the verdicts transcribed in the record was evidently not signed. This renders the verdict defective. *See Brown v. State,* (1977) 266 Ind. 82, 360 N.E.2d 830. However, such defect is in form only, not substance.

Hudson's failure to assail its propriety at the time of its rendition and before the jury dispersed waives the defect. *See Smith v. State,* (1965) 247 Ind. 126, 211 N.E.2d 186; *see also* 23A C.J.S. *Criminal Law* § 1395 (1961).

The informant-buyer and the three police officers involved testified to the above recited facts. Michael Lantz, a police chemist, testified without objection that the subject pills contained phenmetrazine. Hudson attended the second day of trial, offering no explanation for his earlier absence, and was declared guilty of all three counts of dealing. He now appeals.

## DECISION

■ Before reaching the merits of this case, we must point out to appellate counsel a nearly fatal flaw in the record. The trial judge never certified the transcript of Hudson's trial as required by Ind.Rules of Procedure, Appellate Rule 7.2(A)(4). Ordinarily, this mistake would be a waiver of any and all errors derived from that portion of the record, such portion not being properly *in* the record. *See State v. Allison*, (1956) 235 Ind. 294, 133 N.E.2d 469; *Messersmith v. State*, (1940) 217 Ind. 132, 26 N.E.2d 908; *Smith v. State*, (1926) 198 Ind. 484, 154 N.E. 3; *Paxton v. Paxton*, (1981) Ind.App., 420 N.E.2d 1346. However, to save judicial time by obviating a possible belated appeal and because the transcript of the trial contains no reversible error anyway, we will go ahead and address the merits of the case, as is our wont to do.

### Amended Information

■ Hudson insists he was denied his right to notice and to a hearing when the court allowed the State to amend its charging information, changing "Preludin" to "phenmetrazine." The issue is governed by IND.CODE 35-34-1-5 (amended 1983 Ind.Acts, P.L. 320, § 13), newly instituted the same month the State altered Hudson's charge, which requires that all parties be given adequate notice and an opportunity to be heard before amendment of an information. The trial court, therefore, did err in failing to accord Hudson these rites. However, we do not perceive reversible error in the absence of any prejudicial effect on Hudson's case.

In order to so reverse on this issue, we would have to find that Hudson's constitutional right to be informed of the nature of the charges against him had been harmed. We find no such harm. The alteration of the generic name "Preludin" to "phenmetrazine" was a change in form only, not substance. The essence of the facts and of the offense did not change—the Schedule II drug remained the same. Nor has Hudson shown that the amendment rendered any of Hudson's defenses or evidence inapplicable. The lack of injury and Hudson's contemporaneous failure at any time during the trial to ask for a continuance thereof lead us ineluctably to our conclusion that the trial court's error does not entitle Hudson to reversal. *See Henderson v. State*, (1980) Ind., 403 N.E.2d 1088.

### Failure to Re-arraign

■ Hudson next complains that he was not re-arraigned on the "new" charges contained in the amended information. Without having to decide whether another initial hearing (*see* IND.CODE 35-33-7-5 (amended 1983 Ind.Acts, P.L. 320, § 10)), was required in this case, particularly where the amendment was in the form and not in the substance of the charge, we find the issue waived. The prior arraignment statute, IND.CODE 35-4.1-1-1, specifically provided for waiver of error when a defendant went to trial without objection to the absence of an arraignment. This principle having been also solidly embraced by case law, we feel justified in continuing said practice with the new statute. *See, e.g., Heartfield v. State*, (1984) Ind., 459 N.E.2d 33; *Lindsey v. State*, (1965) 246 Ind. 431, 204 N.E.2d 357; *Harvey v. State*, (1953) 232 Ind. 574, 114 N.E.2d 457; *Ingram v. State*, (1951) 230 Ind. 25, 99 N.E.2d 410. This is not to say that the rights contained in IC 35-33-7-5 can be ignored, but the vindication of these rights and privileges is attained on an individual basis, when and if any are sundered. What we *are* saying is that the mere failure to *read* those rights prior to trial (as opposed to a guilty plea) is waivable error when a defendant does not bring the problem to the court's attention before proceeding to trial. Hudson has so

waived the error here, and, in the absence of claim that any of his individual rights were injured, further inquiry is not justified.

### Absence at Trial

Hudson's third issue attacks the propriety of the trial court's proceeding to trial in his absence. His chief contention is that the court had no way of knowing his failure to be present on the first day was voluntary and, thus, had improperly determined he had waived his constitutional right to be present at trial. Hudson is in error.

■ Hudson was present at the time his trial date had been set. His attorney attempted, in vain, to contact him through prior useful channels, one of which was his mother's phone number. Counsel was unable to connect with him, and Hudson's mother changed her phone number without notification. From this information, the trial court entertained the presumption that Hudson's absence was voluntary. As we stated in our recent case of *Walton v. State*, (1983) Ind.App., 454 N.E.2d 443, we believe this is a pretty tenuous presumption. However, as also transpired in the *Walton* case, we will allow that presumption to stand because Hudson has totally failed to otherwise explain his absence on that first day. As we said in *Walton*, "we question the appropriateness of such a presumption, especially after such a brief inquiry by the court. We cannot, however, allow defendants to set the time or circumstances under which they will be tried." 454 N.E.2d at 444. We are also cognizant that the trial court must afford a defendant "the opportunity to present evidence that the absence was not voluntary." *Id.* This does not require a *sua sponte* inquiry; rather the defendant cannot be prevented from explaining. Hudson was not so prevented, and he has not presented us with error in this respect.

### Counsel's Motion to Withdraw

At the beginning of trial, Hudson's attorney moved to be allowed to withdraw, citing lack of communication and cooperation with his client. The court denied the motion, and now Hudson complains such denial was error. We believe that if Hudson considers carefully exactly what he is alleging, he will determine, like we do, that the issue is groundless.

■ By our sketchy reconstruction of the scenario, we find that what Hudson has presented to us is the allegation that the court abused its discretion in failing to allow an attorney to withdraw his representation *on the day of trial* when the client is not present, is obviously unaware of the motion, and does not have alternate counsel. To deny such a motion is not an abuse of discretion, particularly when the result of granting such a motion would leave Hudson totally unprotected and the court, subject to attack for denying him his right to counsel. In the absence of an allegation of ineffective assistance of counsel, Hudson has no cause to complain of the court's action in allowing his attorney to represent him at trial. *See Morgan v. State*, (1979) Ind.App., 397 N.E.2d 299; *Perry v. State*, (1979) 181 Ind.App. 553, 393 N.E.2d 204.

### Expert Witness

■ The fifth of Hudson's issues is the contention that the police chemist who identified the phenmetrazine was not sufficiently qualified as an expert witness, and thus, it was error for the court to allow him to testify on the subject of the chemical composition of the pills. Hudson made no objection to this witness's qualifications at the time of his testimony. The issue is waived. *See Daniels v. State*, (1982) Ind., 436 N.E.2d 788.

### Mug Shots

When Hudson did not appear on the first day of trial, the prosecution had to rely on some formula for identifying Hudson other than selecting him from among living bodies in the courtroom. Thus, a series of six Michigan City Police Department mug shots—front and profile—were presented to witnesses and ultimately, to the jury.

Each photograph clearly revealed the nature of the portraits by displaying a police identification number and the date of arrest. The date on Hudson's mug shot evidenced that he had been arrested at least once prior to the incidents for which he was on trial.

These mug shots were introduced without objection, and counsel failed to mention them in Hudson's motion to correct error. Hudson first presented this issue as error here on appeal, contending that, regardless of the earlier lack of objection, showing his mug shot was fundamental error for which timely objection at trial was not required. He argues that evidence of prior unrelated criminal activity, adduced by the jury from glancing at the police identification plate in the photographs, was unduly prejudicial thereby denying him his right to due process. That is not the law in Indiana.

■■■■ Our supreme court has clearly stated that when mug shots, clearly identifiable as such, are admitted at trial and *not objected to*, all error based thereon is waived. *Robbins v. State*, (1968) 251 Ind. 313, 241 N.E.2d 148; *see also Head v. State*, (1982) Ind., 443 N.E.2d 44 (failure to object to prosecutor and witnesses' usage of terms "mug shots" and "mug books" waives error). We do not contest the fact that generally, evidence of a defendant's unrelated criminal activity is inadmissible, with certain well-defined exceptions. *See, e.g., Rowan v. State*, (1982) Ind., 431 N.E.2d 805 (impeachment); *Hauger v. State*, (1980) Ind., 405 N.E.2d 526 (contradictory proof of bad character); *Cobbs v. State*, (1975) 264 Ind. 60, 338 N.E.2d 632 (common plan, scheme, or design, motive, and guilty knowledge). For purposes of this case, the mug shots fall within that category of evidence that, when admissible for one purpose, cannot be rendered inadmissible because it coincidentally reveals prior criminal activity. *See Samuels v. State*, (1978) 267 Ind. 676, 372 N.E.2d 1186; *Soladine v. State*, (1981) Ind.App., 421 N.E.2d 1142. Hudson had absented himself from the first day of trial. How else was the prosecution to establish the witnesses were all speaking of the same suspect if it was unable to present probably the only photographic image of Hudson available to it? We do not condone the prosecution's failure to mask the fact that the portraits were indeed mug shots. But these photographs were not entered into evidence for the purpose of establishing Hudson's prior criminal activity. They were relevant to the prosecution and, apparently, were the only such identification evidence of its kind readily available. A timely objection at trial would have given the prosecution the opportunity to eliminate any unduly prejudicial characteristics of a mug-shot type of photograph. But in the absence of such objection, Hudson cannot now argue undue prejudice from those characteristics as is argued in the appropriate cases. *See, e.g., Martin v. State*, (1983) Ind., 453 N.E.2d 1001; *Miller v. State*, (1982) Ind., 436 N.E.2d 1113; *Strong v. State*, (1982) Ind., 435 N.E.2d 969; *see also Boyd v. State*, (1981) Ind., 425 N.E.2d 85 (unadorned mug shots objected to as *irrelevant*, but not as prejudicial; therefore, only relevancy issue addressed on appeal). Thus, Hudson is not entitled to reversal within the facts as they presented themselves here for lack of fundamental error. *Samuels v. State, supra; see also Badelle v. State*, (1983) Ind., 449 N.E.2d 1055; *Knight v. State*, (1982) Ind.App., 436 N.E.2d 866.

## Insufficiency of the Evidence

■■■■ Hudson challenges the sufficiency of the evidence underlying the jury verdicts against him, particularly castigating the insufficient controls over the police-orchestrated buys. In such a situation, our standard of review is well settled. We neither reweigh the evidence placed before the jury nor determine the credibility of the witnesses it hears. If there is substantial evidence to support the jury's conclusion Hudson was guilty beyond a reasonable doubt, its verdict will not be disturbed. *See Terry v. State*, (1984) Ind., 457 N.E.2d 546. Pursuant to this oft-cited standard, we must affirm here.

The informant and the police officers involved testified the informant was subjected to a thorough pat-down search both before and after the purchases and that the informant drove an undercover police automobile. The informant additionally stated that on each of the three occasions, he bought six Preludins from Hudson and turned them over to the police. Hudson attacks the sufficiency of the pat-down searches because he insists a strip-search and a complete body cavity check is necessary. He also asserts the police improperly failed to search their own undercover car each time. We first must point out to Hudson that requiring the officers to search an undercover car they themselves are furnishing would appear to be rather redundant. Secondly, pat-down searches of informants are sufficient in a controlled buy, at least in the case of marijuana. *Haynes v. State*, (1982) Ind., 431 N.E.2d 83. Most importantly, however, is that we make Hudson understand the perspective within which we view the adequacy of controls in a police buy. Adequacy goes to the weight and credibility of the evidence presented rather than to the burden of proof, which Hudson seems to argue. Regardless, we remind Hudson that the sole uncorroborated testimony of the informant-buyer is sufficient to convict, despite any arguable inadequacies in the controls of the buy. *See Hudgins v. State*, (1983) Ind., 443 N.E.2d 830; *Haynes v. State, supra.* The jury's verdicts were supported by substantial evidence and were therefore not contrary to law.

Affirmed.

CONOVER, P.J., and YOUNG, J., concur.