John Franklin **HARTMAN**, Appellant,

v.

**STATE of Indiana, Appellee.**

No. 3–879A223.

Court of Appeals of Indiana,
Third District.

March 20, 1980.

Rehearing Denied April 28, 1980.

Daniel Roby, Larry A. Steele, Fort Wayne, for appellant.

Theodore L. Sendak, Atty. Gen., Joel Schiff, Deputy Atty. Gen., Indianapolis, for appellee.

HOFFMAN, Judge.

Defendant-appellant John Franklin Hartman was convicted of driving while intoxicated, IC 1971, 9–4–1–54(b)(1)(A) (1979 Burns Supp.). The dispositive issue raised by his appeal is whether a proper foundation had been laid for admission of the breathalizer test results.

The record reflects that on December 21, 1978, Hartman was arrested for driving without an operator's license and public intoxication. He was escorted to the police station where a breathalizer test was administered to him. The test results revealed a blood alcohol level of .182% which is nearly twice the amount considered to be prima facie evidence of intoxication. Hartman was then arrested for driving while intoxicated.

Prior to trial Hartman's original counsel, Thomas Swihart, apparently entered into a stipulation regarding a breathalizer operator waiver. At trial, however, Hartman was represented by Harold Myers who contended that he was not bound by the stipulation. The trial court ruled otherwise. Nevertheless, the stipulation was never introduced into evidence nor was it entered in the minutes of the court records. After a bench conference the State moved for a short recess so that it could locate the breathalizer operator, Thomas Collins. Collins testified he was certified by the Department of Toxicology (Department) to administer breathalizer tests and that the equipment and chemicals used to perform the test on Hartman had been inspected and approved by the Department on December 20, 1978.

When the State sought to introduce the video tape depicting the operation of the breathalizer test and the finding of .182% alcohol in the blood, Hartman objected on the grounds that a foundation had not been laid for its admission since there was no testimony that the operator used techniques approved by the Department. The trial court, observing that on video tape Collins stated that the machine was on and the temperature was within operating range, ruled that the video tape was admissible in that it showed the correct procedures were followed.

IC 1971, 9–4–4.5–6 (1979 Burns Supp.) sets forth certain requirements that must be met prior to breathalizer test results being accepted as evidence. It provides in relevant part:

".    .    . No breathalizer test shall be considered as evidence for the purpose of this chapter [9–4–4.5–1—9–4–4.5–6] if it is not performed by a person certified as a valid operator by the department, and no equipment or chemicals shall be used for such breathalizer tests which have not

been inspected and approved under the rules and regulations adopted by the department. . . ."

Another pertinent statutory provision, IC 1971, 9–4–4.5–2 (1979 Burns Supp.), reads in part:

"The term 'chemical test' . . . includes a 'Breathalizer test,' which means a chemical test of the breath of a person using techniques and equipment approved by the department of toxicology of the Indiana University school of medicine."

Finally, one of the regulations of the Department filed pursuant to IC 1971, 9–4–4.-5–5 provides:

"A. The director shall approve a method for the administration of a test to analyze breath for ethanol for each approved instrument.

1. Such approved method shall be kept on file in the state department of toxicology of Indiana University School of Medicine.

2. Such approved method shall be followed in making an analysis of breath for ethanol."

Ind.Admin. Rules & Regs. (9–4–4.5–6)–3 (Burns Code Ed.)

From the foregoing provisions three requirements for a proper foundation for the admission of breathalizer test results can be found:

"1. The test was administered by an operator certified by the department of toxicology;

"2. The equipment used in the test was inspected and approved by the department of toxicology; and

"3. The operator used techniques approved by the department of toxicology."

Klebs v. State (1974), 159 Ind.App. 180, at 183, 305 N.E.2d 781, at 783.[1]

Having reviewed the entire record it must be concluded that the State failed to satisfy the third requirement. While the video tape portrays the technique utilized by Collins to administer the test, the record is devoid of any evidence establishing that the procedure utilized resembled the procedure approved by the Department. Hence, the test results were inadmissible.

Nor can the conviction be affirmed under the harmless error doctrine. Unlike *Kelbs* where the evidence showed that the defendant had consumed between eight and ten bourbon and waters over a three and a half-hour period and thus supported the finding of intoxication irrespective of the erroneous admission of the test results, here the only evidence relating to the amount that Hartman had imbibed was his admission on the video tape[2] that he had consumed a little bit of beer, champagne and mixed drinks over a two-hour period at a Christmas party. While the arresting officer did testify that Hartman's eyes were bloodshot and that he smelled of alcohol, such testimony is insufficient to support a finding of intoxication. *See: Jones v. State* (1974), 161 Ind.App. 236, 315 N.E.2d 403.

Of course the stipulation might well have obviated this discussion had it been contained in the record but such was not the case. The State failed to offer it into evidence nor was it filed with the clerk or entered upon the minutes of the court. *See:* IC 1971, 34–1–60–5 (1979 Burns Supp.). Thus, from an appellate standpoint the terms of the stipulation rest on speculation and surmise.

For these reasons the conviction cannot stand.

1. Citing *Jones v. State* (1974), 161 Ind.App. 236, 315 N.E.2d 403 the State maintains there are only two requirements for admission of the test results, namely, certification of the operator who administered the test and that the equipment used was inspected and approved. *Jones* is certainly consistent with what has been stated herein. *Jones* merely held that the test results were inadmissible because the State failed to prove that the breathalizer device was inspected and approved by the Department. Since it found this evidentiary flaw in the State's case there was no need to address the other requirements.

2. We have viewed the video tape and observed the tests administered by the police and cannot determine from such that the defendant was intoxicated.

Judgment reversed.

Reversed.

GARRARD, P. J., and STATON, J., concur.